**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 1:99-cv-02173-REB

BIODIVERSITY CONSERVATION ALLIANCE (formerly Biodiversity Associates); and BRIAN BRADEMEYER,

     Plaintiffs,

v.

DANIEL JIRON, Regional Forester for the Rocky Mountain Region of the United States Forest Service; TOM TIDWELL, Chief of the United States Forest Service; and CRAIG BOBZIEN, Supervisor for the Black Hills National Forest,

     Defendants,

LUCAS LENTSCH, Secretary of the South Dakota Department of Agriculture; BLACK HILLS FOREST RESOURCE ASSOCIATION; BLACK HILLS MULTIPLE USE COALITION; LAWRENCE COUNTY; MEADE COUNTY; and PENNINGTON COUNTY,

     Intervenor-Defendants.

_____

**ORDER DENYING PLAINTIFFS' MOTION AND**
**PETITION TO ENFORCE SETTLEMENT AGREEMENT**
_____

**Blackburn, J.**

     The matter before me is plaintiff's **Motion and Petition To Enforce Settlement Agreement** [#87],[1] filed May 31, 2013. I deny the motion.

### I. JURISDICTION

     I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

---

[1] "[#87]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

1

## II.  STANDARD OF REVIEW

A settlement agreement is a contract between the parties to end judicial proceedings.  ***Citywide Bank of Denver v. Herman***, 978 F.Supp. 966, 977 (D. Colo. 1997).  The construction and enforcement of a settlement agreement are determined by reference to state law contract principles.  ***United States v. McCall***, 235 F.3d 1211, 1215 (10th Cir. 2000).  As with other contracts, the interpretation of a settlement agreement is a matter of law for the court.  ***Florom v. Elliott Manufacturing***, 867 F.2d 570, 575 (10th Cir. 1989).[2]

## III.  ANALYSIS

The underlying facts of this case are well-known to the parties and are set forth in detail in the Tenth Circuit's decision in ***Biodiversity Associates v. Cables***, 357 F.3d 1152 (10th Cir.), ***cert. denied***, 125 S.Ct. 54 (2004).  In 1997, and partially in response to a growing pine beetle infestation, the United States Forest Service ("USFS") approved a revised plan for the Black Hills National Forest ("BHNF") which allowed logging in a significant portion of the Beaver Park Roadless Area.  ***Id.*** at 1157.  It then began to prepare for a timber sale in that area.  ***Id.***  Various environmental groups, including plaintiffs, objected to the sale on several grounds, including, *inter alia*, the potential impact on the northern goshowak population in the BHNF.  ***Id.*** at 1158.

Following an administrative challenge, the Chief of the Forest Service issued a decision in October 1999, which essentially upheld the plan but required adjustments to provide for diversity of plant and animal communities and insure species viability across the forest.  (***See* Fed. Def. Resp. App.**, Exh. D at Vol. 2, at 7 (P32390).)  However, the

---

[2] Because neither the terms nor the existence of the settlement are in dispute, an evidentiary hearing is not required.  ***See City & County of Denver v. Adolph Coors Co.***, 813 F.Supp. 1476, 1482 (D. Colo. 1993).

2

decision did not stop all pending projects while the scope and viability of such adjustments were studied, and therefore the USFS put the timber out for bid.  ***Cables***, 357 F.3d at 1158.

Plaintiffs and other environmental groups then filed a complaint in the United States District Court for the District of Colorado challenging this decision.[3]  The parties settled the case in 2000, and the presiding judge granted the parties' joint motion to dismiss, accepting and approving the parties' Settlement Agreement.

The Settlement Agreement requires the USFS to produce a Phase II amendment to the 1999 revised plan which would

> amend current management direction – including forest-wide standards and guidelines – with appropriate public involvement to ensure compliance with the requirements of [National Forest Management Act], its implementing regulations and implementing policy, and all inadequacies identified in the Chief's appeal decision of October 12, 1999 for the remainder of the life of the Forest Plan Revision, except as otherwise amended by applicable law.

(***See* Fed. Def. Resp. App.**, Exh. A ¶ 9(a) at 25.)  It further provides for the continuing jurisdiction of the court "for the purpose of entering further orders, direction, or relief as may be necessary or appropriate for the construction**,** implementation, or enforcement of this Agreement."  (***Id.*** ¶ 14(g).).  Nevertheless, the Settlement Agreement provided for its own demise:  "This Agreement, and the rights and obligations created by it, shall expire and be of no further effect or validity upon the promulgation of the Phase II Forest Plan amendment, and upon completion of any additional analysis required by this agreement."  (***Id.*** ¶ 14(i).)

---

[3] The Colorado federal court "had jurisdiction over the lawsuit because the relevant Forest Service offices were in Colorado."  ***Cables***, 357 F.3d at 1158.

On October 31, 2005, Rick Cables, Rocky Mountain Regional Forester, signed a Record of Decision ("ROD") for Phase II.[4]  Plaintiffs and others administratively appealed to the USFS Chief, who dismissed the appeal on November 1, 2006.  In January 2011, plaintiffs sent written notice to the USFS and other parties to the Settlement Agreement stating that the agency had not performed according to the terms of the agreement, but the USFS declined to enter into negotiations.

On October 28, 2011, plaintiffs and others filed a petition in the United States District Court for the District of Wyoming challenging the Phase II amendment under the Administrative Procedures Act.  In addition, plaintiffs contended that several site-specific projects violated the terms of the Settlement Agreement.  The Wyoming district court found that it lacked subject matter jurisdiction to address alleged violations of the Settlement Agreement.  (**Fed. Def. Resp. App.**, Exh. E at 22.)  On motion for reconsideration, the district court noted that, to the extent the Settlement Agreement had not expired by its own terms on the promulgation of Phase II, ancillary jurisdiction to enforce the Settlement Agreement lay with the court which originally issued approved the Agreement.  (*Id.*, Exh. F ¶ 10-12 at 6-8.)  Not surprisingly, the present motion asking this court to enforce the Settlement Agreement followed.[5]

---

[4] While the approval process for a new forest plan took longer than anticipated, the pine beetle infestation in the BHNF continued apace, reaching "epidemic proportions" by 2002.  **Cables**, 357 F.3d at 1159.  Because the Settlement Agreement prohibited harvesting of deadwood and infested trees, the USFS attempted to negotiate with plaintiffs and the other parties to the agreement to reach a solution.  Although the other parties agreed to the proposed changes, plaintiffs resisted.  *Id.*  Ultimately, Congress enacted the terms of the modified agreement into law.  *Id.* (citing Supplemental Appropriations Act for Further Recovery From and Response to Terrorist Acts on the United States, Pub. L. No. 107–206, § 706, 116 Stat. 820, 864 (2002)).  Plaintiffs challenged that legislation on separation of powers grounds, but the Tenth Circuit found it to be constitutional.  *Id.* at 1172-73.

[5] At its inception, the case had been assigned to former Judge Edward W. Nottingham.  The case was reassigned to me after the motion to enforce was filed.  (*See* [#88], filed June 3, 2013.)

4

In response to the motion, defendants argue, *inter alia*, that plaintiffs' attempt to enforce the terms of the Settlement Agreement is barred by laches.[6] "The defense of laches is bottomed on the principle that equity aids the vigilant, not those who sleep on their rights." ***Park County Resource Council, Inc. v. United States Department of Agriculture***, 817 F.2d 609, 618 (10th Cir. 1987), ***overruled on other grounds as stated in Village of Los Ranchos De Albuquerque v. Marsh***, 956 F.2d 970, 973 (10th Cir.), ***cert. denied***, 113 S.Ct. 59 (1992) (citation and internal quotation marks omitted). Although the "[m]ere passage of time does not amount to laches," ***Jicarilla Apache Tribe v. Andrus***, 687 F.2d 1324, 1338 (10th Cir. 1982), laches may bar a suit where unreasonable delay in asserting a claim has prejudiced the defendant materially. ***United States v. Rodriguez- Aguirre***, 264 F.3d 1195, 1208 (10th Cir. 2001). Because these questions must be determined according to the particular facts of each case, ***see Hutchinson v. Pfeil***, 105 F.3d 562, 564 (10th Cir.), ***cert. denied***, 118 S.Ct. 298 (1997), the court retains significant discretion in determining whether laches applies, ***see Park County Resource Council***, 817 F.2d at 617.

Considering these relevant elements in turn, it first is clear to this court that there has been delay in bringing the present motion to enforce the Settlement Agreement. The ROD was issued in October 2005. Plaintiffs' administrative appeal was dismissed in November 2006. Suit was not initiated in the Wyoming federal court until October 2011, nearly five years later.[7]

---

[6] Because I find this argument persuasive and dispositive, I do not consider defendants' remaining arguments in opposition to the motion.

[7] The intervenor defendants dispute that they received plaintiffs' January 2011 written notice of the claimed non-performance of the terms of the Settlement Agreement. Assuming *arguendo* that notice was received at that time, however, plaintiffs nevertheless waited more than four years to initiate proceedings challenging the validity *vel non* of Phase II, which delay I find constitutes unreasonable delay in any event.

5

Moreover, I find and conclude that such delay was unreasonable.  Plaintiffs offer little explanation of their actions relevant to pursuing available remedies during this appreciable lapse of time.  Instead, they relegate to a mere footnote the suggestion that because "some NFMA claims regarding a forest plan or amendment are not ripe until the Forest Service has implemented that plan or amendment components through a site-specific project," they "could not immediately challenge the Phase II Amendment but instead exhausted [their] administrative remedies on a number of site-specific projects implementing Phase II before filing suit in the Wyoming District Court."  (**Plf. Reply Br.** at 7 n.2.)  Plaintiffs provide not a shred of evidence to substantiate these bald, global assertions.  I am neither required nor inclined to consider such unsupported and inadequately briefed arguments, nor plaintiffs' *ipse dixit* regarding their diligence *vel non*.  **See Center for Biological Diversity v. Pizarchik**, 858 F.Supp.2d 1221, 1229 n.11 (D. Colo. 2012).

      Moreover, I note that plaintiffs' claims in this suit do not arise under the NFMA or any other environmental statute; instead, they seek to enforce a contract.  Therefore, whatever administrative or other remedial actions plaintiffs may have been required to undertake pursuant to any such environmental statutes are not relevant in considering their rights to enforce the terms of the Settlement Agreement.  Plaintiffs knew or should have known by at least November 1, 2006, that Phase II would be implemented as set forth in the 2005 ROD, that is, without the provisions here claimed the agreement required be included.  Their claim that such failure constituted a breach of the terms of the Settlement Agreement therefore was fully ripe at that time, and their failure to seek a judicial remedy of that alleged breach until years later constitutes the type of unreasonable delay which the equitable doctrine of laches was intended to address.

Moreover, defendants have demonstrated that the delay in asserting the claim has materially prejudiced them. For years, including the time period relevant herein, the Forest Service has managed the BHNF in accordance with the Phase II amendment, with no apparent indication that plaintiffs believed such implementation to constitute a violation of the Settlement Agreement. Defendants have proffered evidence substantiating that the Forest Service has undertaken significant efforts to manage the mountain pine beetle infestation that has plagued the BHNF in reliance on the Phase II amendment and the terms of the Settlement Agreement. Thinning trees within the forest is the only long-term solution to controlling the pine beetle infestation and the fire risks associated therewith, and a comprehensive and continual program is required. (*See* **Sowers Decl**. ¶¶ 13-15 at 4-5 [#95], filed June 21, 2013.) Any delay in implementing the measures already underway poses a significant risk not only to the forest itself, but to property and persons located adjacent to it.[8] Indeed, addressing these issues was a major component of the 2005 ROD. (*See* **Fed. Def. Resp. App.**, Exh. C ¶ II at P30145-P30146.)

I therefore find and conclude that defendants have proven that plaintiffs' unreasonable delay in pursuing their claim has prejudiced defendants. Accordingly, plaintiffs' claims are barred by laches, and the instant motion to enforce the Settlement Agreement must be denied.

### IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

---

[8] These efforts are complicated by the fact that many of the affected areas of the BHNF border, and thus may impact, non-federal lands. (*See* **Sowers Decl.** ¶¶ 5-10 at 2-3.) The Wyoming district court examined these issues in depth in its decision as well. (*See* **Order Upholding Agency Action** at 6-9 [#94], filed June 21, 2013.) *See also* ***Cables***, 357 F.3d at 1158-59.

1. That plaintiff's **Motion and Petition To Enforce Settlement Agreement** [#87], filed May 31, 2013, is **DENIED**;

2. That under D.C.COLO.LCivR 41.2, this action is **CLOSED ADMINISTRATIVELY**; and

3. That under D.C.COLO.LCivR 41.2, the clerk is **DIRECTED** to close this civil action administratively, subject to reopening for good cause.

Dated July 16, 2013 at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge